## SLAKOFF v. UNITED STATES.

(Circuit Court of Appeals, Third Circuit.
September 29, 1925.)

### No. 3286.

**1. Post office ⬤⟹35—What false representations will sustain charge of using mails to defraud stated.**

A financial statement sent out through the mails and on which credit was secured, though incorrect and grossly misrepresenting facts, does not amount to fraud in law which will sustain a conviction for fraudulent use of the mails unless the false representation was knowingly and willfully made with fraudulent intent; but it was the duty of the defendant sending out such statement to make such investigation as was necessary to enable him honestly to sign and send it out, and, if he did not, but acted with such gross carelessness and indifference to the truth of the representations made as to warrant the conclusion that he acted fraudulently, his conviction may stand.

**2. Bankruptcy ⬤⟹242(2)—Defendant's schedules in bankruptcy admissible in evidence.**

The provision of Bankr. Act, § 7 (9), being Comp. St. § 9591, that no testimony given by a bankrupt on his examination shall be used against him in any criminal proceeding, refers to oral testimony, and does not render his schedules, though used in such examination, inadmissible against him in a subsequent criminal prosecution.

**3. Criminal law ⬤⟹633(1)—Occurrence in court held not prejudicial to defendant.**

The fact that similar questions arising in another case, were unintentionally argued on a motion for new trial in the presence of the jury in the pending case, no objection being made by defendant's counsel *held* not prejudicial nor to require the court to permit withdrawal of a juror.

**4. Criminal law ⬤⟹721(5)—Statement of prosecutor held not comment on defendant's failure to testify.**

When the entire statement made by a prosecutor in argument amounts merely to an argument that the evidence of the government is uncontradicted and unexplained, without necessarily calling attention to defendant's failure to testify, it is not ground for reversal.

In Error to the District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Criminal prosecution by the United States against Benjamin A. Slakoff. Judgment of conviction, and defendant brings error. Affirmed.

Henry W. Braude (of McAvoy & Braude), of Philadelphia, Pa., for plaintiff in error.

George W. Coles, U. S. Atty., and L. Le Roy Deininger, Asst. U. S. Atty., both of Philadelphia, Pa.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. Benjamin A. Slakoff, defendant below, was indicted, tried, and convicted for having devised a scheme and artifice to defraud and for obtaining property by means of false and fraudulent representations, and for using the mails for the purpose of executing the scheme, in violation of section 215 of the United States Criminal Code (Comp. St. § 10385).

He was engaged in manufacturing and selling clothing at the southeast corner of Twenty-Second and Arch streets, Philadelphia, Pa., under the name of B. A. Slakoff & Co. The indictment contains eight counts. In the first, second, third, and sixth he was charged with sending through the mails to prospective creditors a statement of which the following is a copy, representing his net worth to be $49,098.45 on December 30, 1922:

State of Financial Condition as of December 30, 1922.

### Assets.

| | |
|---|---|
| Cash on hand and in bank (National Bank of Commerce) | $ 4,287.60 |
| Accounts receivable | 31,012.19 |
| Inventory | 28,614.23 |
| Machinery and fixtures | 9,849.06 |
| Liberty bonds | 350.00 |
| Real estate | 7,850.00 |
| Building & Loan Association | 1,651.25 |
| | $83,614.33 |

### Liabilities.

| | |
|---|---|
| Notes payable | $15,500.00 |
| Other notes payable | 1,499.81 |
| Accounts payable | 13,416.07 |
| Mortgages | 4,100.00 |
| Total | $34,515.88 |
| Net worth | 49,098.45 |
| | $83,614.33 |

In the fourth, fifth, seventh, and eighth, he was charged with sending through the mails a similar statement representing his net worth to be $57,006.95 on September 1, 1923. The first statement was sent out on January 6 and February 19, 1923, and the second on September 6, October 29, November 2, 3, and 6, 1923.

The statements were admittedly false, in that they did not correctly represent the assets, liabilities, and net worth of the defendant when they were made. Both statements contained an overstatement of his assets—the first one by $18,000 and the second by $17,000.

On the basis of these statements, credit was extended to him. He seeks to relieve himself of the consequences of his alleged wrongdoing by the plea of ignorance, that

he did not knowingly and willfully devise the scheme. His counsel, summing up the substance of .the testimony, said "that he was an illiterate man, not capable of dictating a letter, and that when a letter or statement was to be sent out he gave her (his bookkeeper) a general idea what to write, and either she or the 'stenographer wrote the letter, copied a statement, if one was to be sent out, and then defendant signed it. * * * It did not appear he fully realized their contents. He relied upon the figures given him. He was incapable of making .up the statement himself, and it is doubtful if he fully understood it when presented to him for signature."

[1] That the defendant did the acts charged is not, and cannot be, denied, but he may not be convicted and punished unless he knowingly and willfully did them with the intent to defraud and obtain credit and property. An incorrect statement, grossly misrepresenting facts, does not amount to fraud in law, unless the false representation was knowingly and willfully made with fraudulent intent. Gilpin v. Merchants' National Bank, 165 F. 607, 91 C. C. A. 445, 20 L. R. A. (N. S.) 1023; Cooper v. Schlesinger, 111 U. S. 148, 4 S. Ct. 360, 28 L. Ed. 382. It was the defendant's duty, however, to make such investigation as was necessary to enable him honestly to sign and send out the statements. If he did not do this, but acted with such gross carelessness and indifference to the truth of the representations contained in the statements as to warrant the conclusion that he acted fraudulently, then his conviction may stand. Kaplan v. United States, 229 F. 389, 143 C. C. A. 509; Yusem v. United States (C. C. A.) 8 F.(2d) 6.

The evidence, however, tended to establish that the defendant himself was responsible for the statements. He himself prepared them in part and furnished the bookkeeper with the figures which she put into them. If he did this, knowing the representations to be false, he was guilty of the crime charged. Whether or not he knew the falsity of the statements, and made and sent them out with fraudulent intent, are questions upon which there was sufficient evidence, if the jury believed it, to sustain the verdict. The evidence was correctly submitted to the jury. The court charged that "there must be in the case, not only a finding that the statements were false, but that they were sent out with the intent to defraud." The verdict settles the fact of intent, and the conviction must stand unless the trial judge otherwise committed reversible error.

[2] This the defendant says he did in admitting in evidence his schedules in bankruptcy. Under section 21 (a) of the Bankruptcy Act of 1898 (Comp. St. § 9605), the bankrupt must testify and produce his books and papers when required to do so, but section 7 (9), being Comp. St. § 9591, provides that "no testimony given by him shall be offered in evidence against him in any criminal proceeding." This provision is simply the recognition of the constitutional immunity from self-incrimination of the Fifth Amendment. Testimony within the meaning of this section refers to oral evidence and not to schedules prepared at leisure and scrutinized with care by the bankrupt before he verifies them. Consequently they do not come within the inhibition of the act. Ensign v. Pennsylvania, 227 U. S. 592, 33 S. Ct. 321, 57 L. Ed. 658.

[3] Did the court err in refusing to withdraw a juror because a motion for a new trial in another case of similar character was discussed in the presence of the jury and because in his address to the jury the assistant United States attorney, in speaking of the assets and liabilities, said: "But there has been no explanation here as to why these discrepancies appeared"?

No one apparently noticed the presence of the jury; at least, the attention of the court was not called to it until the argument was concluded. The defendant and his counsel are as much in fault, if there be fault, as any one. The occurrence was entirely unintentional, and its effect upon the jury is purely speculative. But in the case of McKibben v. Philadelphia & Reading Railroad Co., 251 F. 577, 163 C. C. A. 571, cited by defendant, the action of a former jury in that same case was designedly brought before the jury with the intention of influencing it. Furthermore it was alleged, and not denied, that during the trial of this case counsel for defendant raised and discussed identically the same questions before the jury that were discussed in the other case. It is the duty of courts to see that defendants have a fair trial and that their rights are protected; but it does not appear to us in this case that the rights or interests of the defendant were prejudiced. We do not think that the learned trial judge erred in refusing to withdraw a juror and continue the case.

[4] The defendant did not testify or offer any testimony in his behalf. Act March 16, 1878 (20 Stat. 30; Comp. St. § 1465), pro-

vides that, in the trial of all indictments in the United States courts, "the person so charged shall, at his own request but not otherwise, be a competent witness. And his failure to make such request shall not create any presumption against him." If the statement to the jury was designed to direct attention to defendant's failure to testify or to create a presumption against him on that account; or if, in the ordinary use of language, it had such necessary effect, the statute was violated and reversible error was committed. Shea v. United States, 251 F. 440, 163 C. C. A. 458. In the case of Linden v. United States (C. C. A.) 296 F. 104, we said:

"Every one accused of crime is presumed to be innocent until proven guilty. During the period of that presumption, one so accused may combat the evidence brought against him; or he may, if he choose, meet it in silence. That is his right. For its protection the law imposes corresponding silence upon prosecutor and court. Neither can validly refer or indirectly call attention to his failure to speak in his own defense. Being innocent in the eyes of the law, he is not called upon to meet accusing testimony by contradiction or explanation. Therefore no presumption can lawfully be raised or comment lawfully be made upon his failure to do that which the law expressly says he shall not be required to do."

The assistant United States attorney said that the discrepancies in the assets and liabilities were shown from the books by the certified public accountant, and that what he had in mind was that neither in his direct nor cross examination was any explanation of them made from the books or otherwise by him. He might easily, under cross-examination, have shown from the books how this occurred. The assets as given in the statements consisted in part of an inventory, equity in real estate, and stock in a building and loan association. There might be an honest difference in opinion as to the value of the inventory and equity in real estate. We said, in the case of Yusem v. United States (C. C. A.) 8 F.(2d) 6, that "the amount of equity in real estate depends upon market value" of the real estate "and this value * * * is a matter of opinion. With the phenomenal rise in the price of real estate generally, * * * the value of the equity given in the statement" might have been the "honest judgment of the defendant and absolutely correct." Whether the figures in the books represented cost or equity was not disclosed by the accountant. This could easily have been ascertained from him under cross-examination without any reference whatever to the failure of the defendant to testify. We held, in the case of Linden v. United States, supra, that under the peculiar facts of that case the language of the court necessarily called attention to the failure of the defendant to testify, but in the case under consideration we do not think it did. When the entire statement of the prosecutor amounts merely to an argument that the evidence of the government is uncontradicted and unexplained, without necessarily calling attention to defendant's failure to testify, it is not ground for reversal. Carlisle v. United States, 194 F. 827, 114 C. C. A. 531; Rose v. United States, 227 F. 357, 363, 142 C. C. A. 53.

The judgment of the District Court is affirmed.