## WHITE v. UNITED STATES.

Circuit Court of Appeals, First Circuit.
February 9, 1929.

No. 2305.

Asa S. Allen, of Boston Mass., and Samuel L. White, of Dorchester, Mass. (Allen & Steadman, of Boston, Mass., on the brief), for appellant.

John J. Walsh, Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., and John V. Spaulding, Asst. U. S. Atty., both of Boston, Mass., on the brief), for the United States.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

JOHNSON, Circuit Judge. The appellant, with four others, was indicted under section 37 of the Penal Code (18 USCA § 88) for conspiracy to commit the offense denounced by section 29b (1) of the Bankruptcy Act of July 1, 1898 (11 USCA § 52(b) (1), by aiding and abetting one Joseph Goredsky, a bankrupt, in concealing from his trustee in bankruptcy two Mack trucks.

Goredsky was a member of the partnership of J. Cushing Company, consisting of himself and one Joseph Cushing, engaged in the trucking business and located at Malden, in the commonwealth of Massachusetts.

An involuntary petition in bankruptcy was filed on March 23, 1925, in the District Court of Massachusetts against both partners and the copartnership. The two partners had not agreed, and on March 20, 1925, Goredsky took possession of the two Mack trucks and placed them in a garage. They had been up to this time in the possession of Cushing, the other partner. Proceedings had been commenced in the courts of Massachusetts, evidently to adjust partnership matters, and in these proceedings Elisha Greenhood represented Cushing as his attorney, and White, the appellant here, represented Goredsky, the other partner.

Possession of the trucks was taken by Goredsky by the advice of his attorney, and upon the day following their seizure Greenhood called upon White for an explanation, stating that a stipulation had been made in court that all of the property of the partnership should remain where it was and should not be disposed of. White denied that such a stipulation had been made, and claimed the right of Goredsky as a partner

to take possession of the property and to sell the same, which he said had been done under his advice, but he did not give the name of the purchaser.

He was informed by Greenhood that a petition in bankruptcy against the partnership and the partners would be filed at once. This was done two days after this conversation, and on March 25, following, a subpœna to answer to the petition in bankruptcy was served upon Goredsky.

On March 26 a bill of sale of the trucks was given by Goredsky in the office of White to one Bromfield. This was drawn by White, who witnessed Goredsky's signature. It was dated March 21, 1925, and on the same date Bromfield gave to Goredsky a check, dated that day, for $3,000, drawn upon the Harvard Trust Company, of Cambridge, Mass.

Ernest F. Tilson, the auditor of the Harvard Trust Company, testified that this check was never cashed, but was canceled by the Trust Company on March 26, 1925; that there was no actual withdrawal of any cash; that the check was indorsed by Goredsky and deposited by Bromfield. He produced a ledger deposit card of the bank, showing Bromfield's deposits and withdrawals, which showed that on March 26, 1925, there was a withdrawal of $3,000 and a deposit of this amount.

On April 22, 1925, Bromfield sold the trucks to one Cahill, and then at different times paid to Goredsky $3,500, from which the appellant received, according to his testimony $610, although at a hearing before the referee in bankruptcy Goredsky testified that he paid him $1,200. White also received a check of $50 from Bromfield for services in acting as his attorney, as he alleges, in the sale of the trucks.

At the trial in the District Court the indictment was nol. prossed as to defendant Wyner, the defendant Bromfield retracted his plea of not guilty and pleaded guilty before verdict, and the jury returned a verdict of guilty against defendants Samuel L. White, George Gordon, and Joseph Goredsky. George Gordon was sentenced to serve a term of imprisonment, but the execution of the sentence was suspended, and the defendant placed upon probation; Bromfield was ordered to pay a fine of $1,000 and be imprisoned for the term of one year and one day, but the execution of this sentence was suspended, and he was placed on probation for a term of two years; Joseph Goredsky was sentenced to serve a term of imprisonment of 18 months in the house of correction; and the defendant Samuel L. White received a sentence of imprisonment in the United States penitentiary at Atlanta, Ga., for the term of two years. This appeal is prosecuted by him alone.

The errors assigned are, in substance, that the court erred in overruling the defendant's motion for a directed verdict, in receiving the testimony of defendant Goredsky in his examination before the referee in bankruptcy, and in refusing to give instructions requested and in instructions given.

■ The contention that a verdict should have been directed for the defendant is entirely without merit. There was abundant evidence, if believed by the jury, that the alleged sale of the trucks to Bromfield did not take place until March 26, 1925, and that it was then only a sham sale, intended to place the trucks in the possession of Bromfield to be sold for his benefit as well as that of Goredsky and White.

■ There was no error in admitting the testimony of defendant Goredsky before the referee in bankruptcy at the hearing upon adjudication, which included statements made and questions by the appellant White while he was acting in said examination as counsel for Goredsky. While the immunity granted by section 7 (9) of the Bankruptcy Act (11 USCA § 25(9) is applicable to the bankrupt, it does not render incompetent testimony in proceedings against others than himself. The particular provision of this section is as follows:

"But no testimony given by him shall be offered in evidence against him in any criminal proceeding."

The immunity which might be claimed by Goredsky could not be claimed by White. The whole of the testimony given before the referee was offered largely for the purpose of showing statements and admissions made by White as counsel in regard to receipt of part of the money paid for the trucks.

The hearing at which the testimony referred to was given was a hearing before the referee upon adjudication. In accordance with the law, a subpœna was served upon Goredsky, notifying him of the hearing, and under section 18b of the Bankruptcy Act (11 USCA § 41(b) he had the right to appear and plead to the petition within five days after the return date; he was not compelled to appear at this hearing, but could appear for the purpose of opposing adjudication and testify voluntarily, and the immunity granted by section 7 (9) would not apply to his testimony so given.

The Supreme Court of the United States has interpreted section 7 (9) of the Bank-

ruptcy Act as confined to the testimony of the bankrupt at the meetings which he was compelled to attend and testify, and that it does not apply to the schedules of the bankrupt or his books and documents. Ensign v. Commonwealth of Pennsylvania, 227 U. S. 592, 33 S. Ct. 321, 57 L. Ed. 658. See, also, Jacobs v. United States (C. C. A.) 161 F. 694.

It is contended that if not barred by section 7 (9) of the Bankruptcy Act it was inadmissible against White because "it was a mere narration by an alleged co-conspirator, made long after the conspiracy had ended." The answer to this contention is that the admission made by White in the statement which he made as counsel for Goredsky before the referee tended to show a conspiracy and explained the acts alleged to have been participated in by his co-conspirators. This admission related only to the receipt of money, which was not denied at the trial in the District Court. Goredsky, Bromfield, and White all testified that money was paid to Goredsky by Bromfield for the trucks, and White in his examination admitted that he received a part of this money, so that if the testimony of Goredsky before the referee was inadmissible under section 7 (9) of the Bankruptcy Act its introduction did no harm.

We have examined the judge's charge relating to concealment and think it fairly covers the law in regard to the same and instructions requested, which the presiding judge was not required to give in the language in which the requests were clothed. The charge of the judge makes it plain that concealment might consist in preventing the trustee from getting possession of the trucks. Applied to the facts disclosed in the present case, the instructions were correct.

The evidence disclosed a conspiracy to aid and abet the bankrupt in concealing from the trustee in bankruptcy the two trucks. The pretended sale three days before the filing of the petition in bankruptcy, attempted to be shown by antedating the bill of sale, which was given upon March 26, three days after bankruptcy, the check given on the latter date, and which Bromfield testified was given on the day the bill of sale was made, and paid upon that date, as clearly shown by the indorsement and cancellation made upon the check, and the testimony of the auditor of the bank, all show a conspiracy in which all the parties participated to put these trucks beyond the reach of the trustee in bankruptcy by an attempt to manufacture proof that the sale was made before the petition in bankruptcy was filed.

It was also contended by the defendant that the charge of the presiding judge was not fair and impartial, and that he went too far in the expression of his opinion in regard to the testimony given by some of the witnesses for the defense. While the statement of his opinion was made in strong and emphatic language, he qualified it by explaining to the jury that they were not bound by his opinion, and said: "That statement is not at all binding on you, but it is my opinion of what they said on the stand."

The rule is well established by repeated decisions of the Supreme Court and other federal courts that, in submitting a case to the jury, a presiding justice may express his opinion on the facts, and that this is not reviewable on error, provided all matters of fact are ultimately submitted to the jury, and they are given to understand that they are the sole judges of the facts. In the very beginning of the judge's charge the jury were told:

"I may tell you such and such a thing I think is so, and there is no exception from my doing so. It does not bind you, because you are the judges of the facts, and, if you do not agree with what I say, it is your function and your duty not to follow it. So that here I may comment on the facts, but you are to judge of them as they do in the state court, and what I say to you as law is to be taken by you as so."

After a full examination of the record, we are convinced that the substantial rights of the parties were not affected by the expression of opinion made by the presiding judge, and that under section 269 of the Judicial Code of the United States (28 USCA § 391) we are required to give judgment after an examination of the entire record without regard to any error which does not affect the substantial rights of the parties. This has been so held in Redmond v. United States (C. C. A.) 8 F.(2d) 24; Weinstein v. United States (C. C. A.) 11 F.(2d) 505; Quigley v. United States (C. C. A.) 19 F.(2d) 756.

The evidence disclosed by the canceled check, the subterfuge attempted in its execution, the testimony of the officers of the bank, as well as that of Bromfield, that the check was paid upon the day the bill of sale was given, the letter of Gould to White, March 23, 1925, notifying him that a petition in bankruptcy had been filed, supplied ample evidence to prove the conspiracy alleged and

to sustain the verdict of the jury. The statute of limitations in section 7 (9) does not apply to an indictment for conspiracy. United States v. Rabinowich, 238 U. S. 78, 35 S. Ct. 682, 59 L. Ed. 1211.

The judgment of the District Court is affirmed.