Thelma GREINER

v.

**VOLKSWAGENWERK AKTIENGESELLSCHAFT.**

**VOLKSWAGEN OF AMERICA, INC.**

v.

**Judith T. NICKEL.**

**Civ. A. No. 74–64.**

United States District Court, E. D. Pennsylvania.

April 6, 1977.

Marshall A. Bernstein, Bernstein, Bernstein & Harrison, Philadelphia, Pa., for plaintiff.

Edward W. Madeira, Jr., David Richman, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant.

## OPINION

JOSEPH S. LORD, III, Chief Judge.

In this diversity case bottomed on Restatement of Torts 2d, § 402(a), the facts are fully and clearly stated in the opinion of the Court of Appeals vacating the judgment and remanding. *Greiner v. Volkswagenwerk Aktiengesellschaft,* 540 F.2d 85 (3d Cir. 1976). In remanding, the court's direction was plain (540 F.2d at pp. 96–97):

> "However, we must reluctantly remand for determinations by the Judge, as a *matter of law,* as to whether or not there was sufficient evidence for the jury to find, if charged, that the lack of warning *was unreasonably dangerous* and the proximate cause of the accident." (Emphasis the court's).

As we read both the court's direction and established Pennsylvania law, liability can only exist when the factors of "unreasonably dangerous" and "proximate cause" coalesce. The absence of either one is fatal to plaintiff's cause of action. Cf. *Greiner,* supra; *Berkebile v. Brantly Helicopter Corpo-*

*ration,* 462 Pa. 83, 337 A.2d 893, 898 (1975); *Lenkiewicz v. Lange,* 242 Pa.Super. 87, 363 A.2d 1172, 1175 (1976). Since we have concluded that there is insufficient evidence of proximate cause in this record, we need deal only with that factor. As we see it, the precise question is: Assuming the necessity of a warning of the Volkswagen's propensity to overturn on sharp steering maneuvers, how did the absence of a warning cause the accident? Or conversely, how would its presence have prevented the accident?

Except for the widely varying estimates of the Volkswagen's speed, the facts of the accident are really not in dispute. Finding herself on her own wrong side of the road facing an oncoming car, the plaintiff's driver, Nickel, turned to her right. She immediately found herself headed for a concrete bridge railing approximately ten feet away. Her speed was between 30 and 60 miles per hour. To avoid the bridge railing, Nickel turned sharply to the left and the Volkswagen overturned. Under these circumstances, warning or not, there was no conceivable way that an accident could have been avoided. Even giving Nickel the best possible reading of the evidence, at 30 miles per hour, she would cover ten feet in approximately one-fourth of a second. It is simply not within the bounds of human reason to suppose that, had there been a warning, Nickel would have recalled it, considered it and then intentionally crashed head-on into a concrete rail. We do not, however, rest our determination on this conclusion.

It is true that the Restatement of Torts, § 402(a), comment j, states:

"Where warning is given, the seller may reasonably assume that it will be read and heeded; . . ." (P. 353).[1]

Implicit in that comment, however, is the assumption that the warning *could* have been heeded to avoid the peril. Here, it could not. Here, when Nickel found herself ten feet from the railing, a serious accident was inevitable, warning or no warning, and plaintiff made no showing that one would have been less devastating than the other. In *Liney v. Chestnut Motors, Inc.,* 421 Pa. 26, at page 29, 218 A.2d 336, at page 338 (1966), the court said:

"It is true that the question of proximate cause is generally for the jury. However, if the relevant facts are not in dispute and the remoteness of the causal connection between the defendant's negligence and the plaintiff's injury clearly appears, the question becomes one of law."

We must conclude as a matter of law, that the causal connection between the lack of warning and plaintiff's injury is too remote to raise a jury question.

Plaintiff points to several cases where recovery was held allowable absent specific evidence of proximate cause. Their factual patterns may be summarized as follows:

1. *Berkebile v. Brantly Helicopter Corp.,* 225 Pa.Super. 349, 311 A.2d 140 (1973). Plaintiff's decedent was killed when a seven foot piece of one of the rotor blades of his helicopter flew off after a power failure, causing the copter to crash. Plaintiff alleged, *inter alia,* an inadequate warning of the need for an instantaneous shift to autorotation in the event of power failure. A judgment for defendant was reversed.

2. *Tomao v. A. P. De Sanno & Son,* 209 F.2d 544 (3d Cir. 1954). A grinding wheel disintegrated, partially blinding the plaintiff. The wheel was being operated at 10,-000 revolutions per minute. The maximum safe speed was less than 6,000 revolutions per minute, but the wheel had no warning to this effect. A verdict for plaintiff was sustained.

3. *Maize, Admr. v. Atlantic Refining Company,* 352 Pa. 51, 41 A.2d 850 (1945). A can of cleaning fluid called Safety-Kleen bore a legend that was held insufficient to warn a user to use it in a well-ventilated space. A verdict for plaintiff was sustained.

---

1. We are assuming, without deciding, that the comment is applicable to the user as well as the seller.

4. *Hopkins v. E. I. Du Pont DeNemour & Co.,* 199 F.2d 930 (3d Cir. 1952). A stick of dynamite exploded when it was inserted into a freshly drilled hole. There was no warning that such an explosion could occur because of the heat generated by the drilling. A judgment for defendant was reversed.

Defendant argues that in all of those cases, there was no specific proof that the absence or inadequacy of warning was a causative factor in bringing about the harm. Those cases, however, are distinguishable. In the first place, the nature of the required warning was both specific and easily followed—push the autorotation button immediately on engine failure, do not operate in excess of 6,000 revolutions per minute, use only in well-ventilated area, and do not insert dynamite in freshly drilled hole. It requires no guess or conjecture to determine how the accident could have been avoided by following the warnings. In this case, on the other hand, although the propensity to overturn on sudden maneuvers could be described, whether such description could have avoided this accident would call for pure speculation.

Secondly, in the four cases referred to by plaintiff, it was reasonable to infer from the evidence that the simple, easily understood directions and limitations could and would be followed had they been given. Their omission or inadequacy could thus be found to be a proximate cause of the accident. This logical conclusion finds expression in comment j to § 408(a). That "[w]here warning is given, the seller may reasonably assume that it will be read and heeded." No such inference can be made here, because under the circumstances of this case, a warning, even if read, could not have been heeded.

At oral argument, plaintiff's counsel suggested a more remote causal connection between the failure to warn and the accident: that had the warning been given Nickel might not have bought the car. Such a suggestion, in our opinion, would have invited the jury "to indulge in 'pure conjecture or guess'". *Greiner v. Volkswagenwerk Aktiengesellschaft,* 540 F.2d 85, 94 (3d Cir. 1976). The fine line between "conjecture" on the one hand, and "reasonable inference" on the other, is sometimes hard to draw. As we have said, it is reasonable to infer that a simple warning such as "Do not operate in excess of 6,000 revolutions per minute" would be followed. It is an inference that arises from the factual situation.

In *Commonwealth v. Whitman,* 199 Pa. Super. 631 at page 634, 186 A.2d 632 at page 633 (1962) the court said:

"Inference is a process of reasoning by which a fact or proposition sought to be established . . . is deduced as a logical consequence from other facts, or a state of facts, already proved or admitted."

See also *Simon v. Fine,* 167 Pa.Super. 386, 391, 74 A.2d 674 (1950).

In *Mitchell v. Machinery Center, Inc.,* 297 F.2d 883 (10th Cir. 1961), the court said at page 885:

"An inference is not a supposition or a conjecture, but is a logical deduction from facts proved and guesswork is not a substitute therefor . . . ."

An inference has also been defined as "a deduction of any ultimate fact from other proved facts, which proved facts, by virtue of the common experience of man, will support but not compel such deduction." *In re: Dilios' Will,* 156 Me. 508, 521, 167 A.2d 571, 578 (1960).

There are no proven facts in this record which would lend the dignity of an inference as opposed to a guess, that Nickel would not have purchased the Volkswagen in the face of a warning. Indeed, the impropriety of permitting the jury to make such a finding is intensified by the fact that Nickel testified in plaintiff's case and was totally silent about the effect such a warning would have had. In the face of available, but unproduced evidence, we think it would have been totally improper to permit the jury to guess what Nickel would have

said if asked about the effect of the presence of a warning.[2]  As counsel for plaintiff aptly put it (N.T. 10–122):

> "MR. BERNSTEIN: In other words, it is the failure to warn that is the defect, and who knows what she would have done had she been alerted to this particular situation."

 Plaintiff also argues that defect means the existence of a characteristic or limitation on the use of a product of which no warning is given, and that causation is proven if a cause and effect relationship between the condition and the harm is established.  Plaintiff says: "It is erroneous to consider the non-warning per se as being the causative factor.  The question is not whether the warning, if given, would have caused the consumer to act differently." Plaintiff's Brief on Remand, p. 11, n. 6.  We disagree.  We find more persuasive the article of Professor Keeton, *Products Liability*, 48 Tex.L.Rev. 398, 414 (1970):

> "If the basis for recovery under strict liability is inadequacy of warnings or instruction about dangers, then plaintiff would be required to show that an adequate warning or instruction would have prevented the harm."

For the foregoing reasons, we are convinced that the record would not justify submission to the jury of the proximate cause of the failure to warn.  Pursuant to the instructions on remand, we will reinstate the judgment for defendant.

---

2.  Indeed, the more reasonable inference is that her testimony would have been unfavorable to plaintiff's case.  2 Wigmore on Evidence (3rd Ed.) § 285.